# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

WILLIAM CECIL BAXTER,

    Plaintiff,

v.                                    Case No. 3:17-cv-770-J-32PDB

WILLIAM LANG, PRACTITIONER,

    Defendant.

## ORDER

### I.  Status

Plaintiff, an inmate of the Florida penal system, is proceeding on an Amended Complaint (Doc. 11); see also First Amended Memorandum of Law (Doc. 12). Plaintiff claims that Defendant was deliberately indifferent to his serious medical needs with respect to his orthopedic boots and prosthetic insert. After this case was filed, at the Court's direction, Defendant and the Florida Department of Corrections ensured that Plaintiff received the prosthetic, and Plaintiff confirmed that it was working properly. However, Plaintiff maintains that Defendant's delay injured him.

Before the Court is Defendant's Motion for Summary Judgment (Doc. 64). The Court advised Plaintiff of the provisions of Federal Rule of Civil Procedure 56, notified him that the granting of a motion for summary judgment would be an adjudication of the claim that could foreclose any subsequent litigation of the matter, and gave him an opportunity to respond. See Order (Doc. 15). Plaintiff has responded. See Plaintiff's

Objections to Defendant's Motion for Summary Judgment (Doc. 66). The Motion is ripe for review.

## II. **Plaintiff's Amended Complaint**

Plaintiff alleges that in July 2016, he spoke with a nurse about the need to replace his orthopedic boots and prosthetic inserts due to normal wear and tear. Doc. 11 at 7. Plaintiff was referred to the doctor. Id. On August 3, 2016, Plaintiff was seen by Dr. Carrion, who assessed Plaintiff's needs and completed a consult report form. Id. at 8. He recommended a "new style 'softer boot," which was approved by Dr. Llorens, the Chief Health Officer at Cross City Correctional Institution (CCCI). Id. On September 15, 2016, Plaintiff was seen by Defendant in the advanced brace clinic at the Reception and Medical Center, where Defendant assessed Plaintiff's foot and "health care appliances." Id. "Plaintiff gave Defendant a copy of the new boot style which had been approved at the Institution . . . to send with his recommendation to Centurion . . . for approval." Id. Defendant advised Plaintiff that if it was approved, "'Plaintiff would return for impressions to build a new prosthetic in a few weeks.'" Id.

On November 10, 2016, Defendant saw Plaintiff in the advanced brace clinic. Id. Defendant advised that everything had been approved, "he took impressions of Plaintiff's feet and asked to keep Plaintiff's prosthetic and inserts to make sure the new ones would be built correctly." Id. Defendant further advised Plaintiff that it would be "2-3 weeks at the longest that Plaintiff would be without prosthetics." Id. On December 15, 2016, Defendant again saw Plaintiff in the advanced brace clinic and "advised that Defendant forgot Plaintiff's orthotic boots and prosthetic inserts at the

2

shop and would have to reschedule in a few weeks." Id. From November 10, 2016 to December 29, 2016, Plaintiff was without a prosthetic, which resulted in "a lot of back, neck, and foot pain." Doc. 11 at 9. On December 29, 2016, Defendant provided Plaintiff with a pair of boots that were the wrong style, and "prosthetic inserts that were cheaply built by []Dr. Comfort Laboratory." Id. "Plaintiff advised Defendant that it was the wrong style boot, and the prosthetic was totally insufficient for Plaintiff's medical need." Id. Defendant told Plaintiff that he could not do anything during that appointment, but he provided Plaintiff with his "old prosthetics back and Plaintiff showed Defendant the difference." Id. at 8-9. "Defendant told Plaintiff to keep the new ones, and Defendant would again reschedule Plaintiff to come back in 1 month to fix them." Id. at 9. Within 10 minutes of Plaintiff wearing the new ones, he "had an open wound on [his] skin graft that lasted 6 weeks." Id.

On January 4, 2017, Plaintiff was called to medical and Dr. Llorens completed a new consult request, "stating that the orthopedic boots were not the ones approved and that the prosthetic needed correction." Id. Then, on February 22, 2017, Dr. Llorens saw Plaintiff at the clinic and "ordered a walking cane, back brace, and shots of Dextamethasone in [his] back as well as Flexirill muscle relaxers due to the intense amount of pain Plaintiff was in." Id. The next time Plaintiff saw Defendant was on March 9, 2017. Id. At that time, "Defendant said he was ordering the new style boot and again took old inserts so he could build a new set exactly as the old prosthetic and inserts were and advised he would schedule Plaintiff in a few weeks to pick up [his] new health care appliances." Id. Plaintiff was seen by Defendant for the seventh time

3

in 10 months on June 14, 2017. Id. "The Defendant had not rebuilt Plaintiff's prosthetic or ordered boots . . . . Defendant had patched Plaintiff's prosthetic poorly and had done the same to the prosthetic that he tried to pass off on 12/29/16 that Plaintiff had advised him would never work for his medical needs as it was built wrong." Id. Defendant told Plaintiff that his company "would not allow him to purchase Timberland pro boots." Id. at 10.

> [Plaintiff] showed Defendant medical records which proved that statement to be a lie. In fact he had purchased a pair and brought them on 12/29/16 they were just the wrong style. [Plaintiff] advise[d] the Defendant that the new style had been approved by the State, the Chief Health Officer Dr. Llorens at Cross City, and the medical provider "Centurion" and that he had already been paid on 10/17/16 to build prosthetic and purchase these boots. Plaintiff advised the Defendant that he would be filing a 1983 Civil Rights violation with an American with Disability claim against him[,] as the 10 month delay had cause[d] unjustifiable pain and suffering[, ]irreversible permanent damage to the skin graft on Plaintiff's left foot[,] and serious nerve damage to Plaintiff's back and neck from the unbalanced, twisted posture necessitated by not having any prosthetic. The Defendant made a big scene of having his assistant B. Tetstone call Dr. Haddid, the Chief Health Officer at R.M.C. to come to the clinic to view the damage being caused to Plaintiff's skin grant and to approve the new style boot. After visual a[ss]essment of the damage to Plaintiff's skin graft Dr. Haddid stated he would purchase the boots and have them ready for delivery in 3 weeks. The Defendant then took new molds of Plaintiff's feet and advised Plaintiff that he would personally build the new prosthetic and would re-schedule an appointment for fitting in exactly 4 weeks. . . . The Defendant kept Plaintiff's old prosthetic and ripped the prosthetic apart that was built incorrectly after Plaintiff requested to keep it to show the courts.

Id. at 10 (record citation omitted).

4

On June 15, 2017, Plaintiff was referred to Dr. Llorens for renewal of his pain-relieving shots, which he began receiving on July 14, 2017. Id. at 11. Defendant and Dr. Haddid saw Plaintiff again on July 20, 2017. Id. Dr. Haddid advised that "he had turned in the requisition order" for the boots, but the Department "was refusing to purchase them." Id. Defendant stated that his company was also refusing to purchase them despite Defendant's recommendation, but if Plaintiff wanted those boots, his institution would have to pay for them. Id. Defendant had built the new prosthetic, but refused to provide it to Plaintiff because he did not have a boot to fit it in. Id. So, Plaintiff requested his old prosthetic be returned to him, and Defendant stated he would mail it to Plaintiff's institution. Id. "Plaintiff informed Defendant that he was in great pain and that his skin graft was being permanently damaged, and he is having foot, back, and neck pain from not having his prosthetic." Id.

As a result of these actions and the delay in getting new boots and inserts, Plaintiff claims that Defendant, in his individual and official capacities, has violated Plaintiff's Eighth Amendment rights, as well as his rights under the Americans with Disabilities Act. Id. at 12. As relief, he requests a declaratory judgment against Defendant; an injunction compelling Defendant to provide the boots and prosthetic inserts;[1] an injunction compelling Defendant to pay for an MRI of Plaintiff's spine, back, neck, and any resulting treatment; and monetary damages. Id. at 12-13.

---

[1] As previously noted, since the filing of this case, Plaintiff has received the boots and inserts. This request for injunctive relief is now moot.

## III. Defendant's Motion

Defendant argues that Plaintiff has failed to establish he acted with deliberate indifference. See Doc. 64 at 12-17. Defendant does not contest that Plaintiff had a serious medical need. But he argues that even assuming Plaintiff could establish that Defendant had the requisite subjective awareness of a substantial risk of harm, he "has failed to establish that [Defendant] disregarded that risk by failing to take reasonable measures to abate it by conduct that constituted 'more than gross negligence.'" Id. at 12-13.[2] Defendant contends that he provided Plaintiff with appropriate and timely medical care: "he evaluated Plaintiff; he took measurements and made impressions of Plaintiff's feet; he ordered boots and replacement inserts, he provided the same to Plaintiff and fitted the prosthetic to his satisfaction; when Plaintiff later complained the prosthetic didn't fit, he endeavored to create a new one; he took new measurements and impressions; he refurbished Plaintiff's old prosthetic; and he created an entirely new prosthetic." Id. at 14. According to Defendant, "[a]t the very worst, Defendant failed to construct a properly-fitting prosthetic, requiring follow-up appointments to achieve a better fit." Id. at 15. He further submits that there is no evidence that he "willfully endeavored to prevent [Plaintiff] from obtaining the right type of orthopedic boot," "was personally responsible for the delay in scheduling Plaintiff to be seen or provided with his prosthetic," or "was personally responsible for

---

[2] The appropriate standard in the Eleventh Circuit is "more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 & n.2 (11th Cir. 2016).

6

denying Plaintiff's requests to be transported to Hanger's Gainesville office to have the prosthetic fitted." Id. at 16.

## IV. **Plaintiff's Response**

Plaintiff argues that Defendant was deliberately indifferent to his serious medical needs by denying Plaintiff his prosthetic from March 9, 2017 to December 14, 2017. Doc. 66 at 1. He further argues that Defendant had "substandard prosthetic inlays built by Dr. Comfort Laboratories that he knew were built wrong and would not be sufficient for Plaintiff's needs." Id. at 2. He asserts that Defendant had Comfort Laboratories build the prosthetic instead of doing it himself because it was cheaper and quicker. Id. at 11. And, despite knowing that the prosthetic was built incorrectly, Defendant "insisted that Plaintiff either accept and try [the] prosthetic (for 30 days) or sign a medical refusal." Id. at 8; see also id. at 12. "Defendant forced Plaintiff to 'try it out for 1 month' and he would have Plaintiff return to brace clinic for a follow up appointment [] at which time he would bring tools to adjust the prosthetic." Id. at 8. "Had Defendant Lang not forced Plaintiff Baxter to try the incorrectly built prosthetic inlay," Plaintiff's skin graft would not have been irreparably damaged. Id. at 9. He also claims that despite being provided with information on the correct style of boots on multiple occasions, Defendant "purposefully order[ed the] wrong style of boots, thereby adding another delay in treatment." Id. at 2; see also id. at 11.

Plaintiff asserts that Defendant had subjective knowledge of his actual pain and suffering, because Plaintiff told Defendant at numerous appointments and "literally begged Defendant Lang to return his prosthetic to him." Id. at 2. He contends that

7

Defendant lied in his treatment notes and to him, id. at 2, 3, 8, and that "[f]or some deliberate unknown reason [Defendant] did everything he could to delay and deny the Plaintiff of his old prosthetics and the new ones he was contracted to provide." Id. at 4. According to Plaintiff, Defendant's deliberate indifference subjected Plaintiff to chronic pain and suffering for nine months, damaged his skin graft, caused him to be removed from a vocational training program,[3] and required him to use a back brace, walking cane, and regular insoles.[4] Id. at 4-5, 10.

## V. Standard of Review

"'Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.'" Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1300 (11th Cir. 2016) (quoting Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11th Cir. 2014)); see Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable

---

[3] Plaintiff requests a transfer back to CCCI. Doc. 66 at 14. He did not request such relief in the Amended Complaint, because he was still housed at CCCI when he filed it. Nevertheless, the Court does not have the authority to direct such relief for multiple reasons. First, the Department is not a party to this case, and there is no indication that Defendant, a medical practitioner, has the authority to direct where Plaintiff is housed. Second, "the decision where to house inmates is at the core of prison administrators' expertise." McKune v. Lile, 536 U.S. 24, 39 (2002). "[I]nmates usually possess no constitutional right to be housed at one prison over another." Barfield v. Brierton, 883 F.2d 923, 936 (11th Cir. 1989) (citing Meachum v. Fano, 427 U.S. 215 (1976)). Thus, the Court lacks the authority to enter an order directing the Florida Department of Corrections to house Plaintiff in a specific facility.

[4] On July 24, 2016, Plaintiff submitted a sick-call request advising that his orthotics were in need of replacement. Doc. 11-8 at 2. This sick-call request prompted the initial appointment with Defendant. In that same request, Plaintiff indicated he needed a new knee brace, walking cane, and a no prolonged standing pass. Id.

8

jury could return a verdict for the nonmoving party." Bowen v. Manheim Remarketing, Inc., 882 F.3d 1358, 1362 (11th Cir. 2018) (quotations and citation omitted); see Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1311 (11th Cir. 2018) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (quotations and citation omitted)). In considering a summary judgment motion, the Court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Hornsby-Culpepper, 906 F.3d at 1311 (quotations and citation omitted).

"[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote and citation omitted); see Winborn v. Supreme Beverage Co. Inc., 572 F. App'x 672, 674 (11th Cir. 2014) (per curiam) ("If the movant satisfies the burden of production showing that there is no genuine issue of fact, 'the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor.'" (quoting Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008)). "A 'mere scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002) (quoting Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (internal quotations omitted)).

## VI. Deliberate Indifference to Serious Medical Needs

"To set out a claim for deliberate indifference to medical need, [the plaintiff] must make three showings: (1) he had a serious medical need; (2) the [defendant] w[as] deliberately indifferent to that need; and (3) the [defendant's] deliberate indifference and [the plaintiff's] injury were causally related. Hinson v. Bias, 927 F.3d 1103, 1121 (11th Cir. 2019); see Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla., 871 F.3d 1272, 1279 (11th Cir. 2017) ("To prevail on [a] § 1983 claim for inadequate medical treatment, [the plaintiff] must show (1) a serious medical need; (2) the health care providers' deliberate indifference to that need; and (3) causation between the health care providers' indifference and [the plaintiff's] injury.").

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quotations and citation omitted).

Deliberate indifference to a serious medical need requires "three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003) (citations omitted); see Dang, 871 F.3d at 1280; Melton, 841 F.3d at 1223 & n.2. "Subjective knowledge of the risk requires that the defendant be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference.'" Dang, 871 F.3d at 1280 (quoting Caldwell v. Warden, FCI Talladega, 784 F.3d 1090, 1099-1100 (11th Cir. 2014)).

> An official disregards a serious risk by more than mere negligence "when he [or she] knows that an inmate is in serious need of medical care, but he [or she] fails or refuses to obtain medical treatment for the inmate." Lancaster v. Monroe Cty., Ala., 116 F.3d 1419, 1425 (11th Cir. 1997), overruled on other grounds by LeFrere v. Quezada, 588 F.3d 1317, 1318 (11th Cir. 2009). Even when medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs. See Harris v. Coweta Cty., 21 F.3d 388, 393-94 (11th Cir. 1994) (citing Brown v. Hughes, 894 F.2d 1533, 1537-39 (11th Cir. 1990)).[5] Further, "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Dang, 871 F.3d at 1280.

---

[5] "Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999) (citation omitted). However, "[i]t is also true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (citing Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985)); see Boone v. Gaxiola, 665 F. App'x 772, 774 (11th Cir. 2016).

**VII.   Analysis**

**A. Deliberate Indifference**[6]

Neither party disputes that Plaintiff had a serious medical need. The only question then is whether Defendant was deliberately indifferent to that need.

On August 3, 2016, a consultation request was completed at CCCI regarding Plaintiff's need for replacement boots and insoles due to normal wear and tear. Doc. 11-9 at 2. It was noted that Plaintiff uses an insert placed in Timberland PRO soft boots. Id. On September 15, 2016, Defendant evaluated Plaintiff and found as follows: "Eval current boots [and] inlays. Boots causing irritation on dorsal surface of foot[.] Inlays wearing through [and] not providing protection or shock absorb needs[.] Picture of boots requested given by pat[ient]." Id. at 3. Defendant made a note that Plaintiff would be rescheduled once he received "author[ization] for replacement." Id. Dr. Llorens completed a Request for Pre-Approval of Health Care Services on September 21, 2016, requesting that Plaintiff receive replacement boots. Doc. 11-8 at 6. Defendant's next consultation report is dated November 10, 2016, during which he recommended that Plaintiff be rescheduled once the boots and inlays were fabricated and received. Doc. 11-9 at 7.

---

[6] In the Response, Plaintiff cites to the Fourteenth Amendment, but because he was a convicted prisoner at the time of the alleged violations, his deliberate indifference claim falls under the Eighth Amendment. See Melton, 841 F.3d at 1220 (quoting Mann, 588 F.3d at 1306). Moreover, to the extent Plaintiff is attempting to sue Defendant in his official capacity, even assuming he can do so, Plaintiff has not alleged that a custom, policy, or practice was the moving force behind the alleged constitutional violation. Thus, the following discussion relates to Defendant in his individual capacity.

12

On December 29, 2016, Defendant's note indicates that he fitted Plaintiff's "custom long arch supp[ort with] partial foot orthosis and accom[modated] depth boots to pat[ient]'s satisf[action]." Doc. 11-9 at 9. He indicated that he would see Plaintiff for a follow-up appointment in one month. Id. A consultation request was completed by Dr. Llorens on January 4, 2017, noting that the materials did not fit, and the boots were not the ones that were previously approved. Id. at 10. Plaintiff was to be rescheduled to see Defendant. Id. On March 9, 2017, Defendant's notes reflect: "Patient request modif[ication] of old custom inlays [and] partial foot orthosis as well as would like his boots replaced from Timberland 6" direct to Timberland Pro Hyperion 6"." Id. at 11. Defendant recommended that Plaintiff be rescheduled in two weeks for "redo of old inserts," and he requested a description of the desired boots to send for authorization. Id. On April 12, 2017, Dr. Llorens completed a consultation request. Id. at 12. On June 15, 2017, Defendant's consultation report states: "Eval current custom long arch support [with left] partial foot [and] accom[modate] depth boots. Pat[ient] not happy [with] current orthotic will remake personally to ap[p]ease. Dr. Haddid to order Timberland boots to accom[modate] at Pat[ient]'s req[uest]." Doc. 11-13 at 3. Defendant recommended that Plaintiff be rescheduled in 4 weeks. Id. On July 20, 2017, Defendant's notes show that he was unable to deliver Plaintiff's "custom long arch supp[ort]s [with left] partial foot orthosis because we have not rec[eive]d the requested Timberland boots from DOC to enable optimum fit." Id. at 4. Defendant further wrote: "Dr. Haddid explained the delay to patient. (Pat[ient] did not [acc]ept)

13

Patient made it clear he was going to sue me because 'my name is the only one he knows.'" Id.

Defendant's consultation report dated November 30, 2017, states: "Eval. pat[ient]'s new boots[.] Will match with orthotics via tracings [and] impression of current inlay from new boots. . . . Patient Request to cover Leather toe filler [and] top cover more durable." Doc. 64-2 at 2. Defendant recommended that Plaintiff be rescheduled in 1 week for "del[ivery] of inlays." Id. On December 14, 2017, Defendant saw Plaintiff and found as follows: "Upon del[ivery] of custom inlays [and] toe filler [(left)] – unable to del[iver] due to [left] filler too thick to properly fit[. I]nstead of going back [and] forth, will need to have patient scheduled [at] our Gainesville office to accom[modate]. (Due to the complexity of fitting to pat[ient]'s specifications). In the meantime we refit [with] refurbished inlays in which pat[ient] states are perfect." Doc. 64-3 at 2. Defendant recommended that Plaintiff be referred to the Hanger Clinic in Gainesville. Id.

There is simply no indication in the record showing Defendant acted with deliberate indifference. He evaluated Plaintiff eight times during the relevant time period. While there was a delay in Plaintiff receiving the correct boots and inlays, there is no evidence to suggest that Defendant intentionally disregarded Plaintiff's needs to cause the delay or that his treatment was "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Dang, 871 F.3d at 1280 (quoting Rogers, 792 F.2d at 1058).

It is unclear why Defendant initially ordered or caused to be ordered the wrong style boot, despite previously being given information on the correct style.[7] Also contributing to the delay, according to Plaintiff, is that Defendant forgot to bring Plaintiff's orthotic boots and inserts to his appointment on December 15, 2016, and had to reschedule him in a few weeks (which he did, on December 29, 2016). However, at most, on this record, Defendant's actions cannot be considered anything more than mere negligence, which does not rise to the level of a constitutional violation. Plaintiff's own allegations support the fact that Defendant continually worked to satisfy Plaintiff's medical needs,[8] in spite of delays, some of which, like transportation issues, were outside of Defendant's control. See generally Doc. 64-1 at 3, 12. Thus, while a delay in receiving treatment may in some circumstances amount to deliberate indifference, there is no evidence to support a finding that the delay here was for a non-medical or other improper reason. See Farrow, 320 F.3d at 1246 (recognizing that deliberate indifference may be found where there is a delay in treatment, "though the reason for the delay and the nature of the medical need is relevant," and a defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference).

---

[7] The Court assumes for purposes of resolving the Motion that Defendant was responsible for ordering or causing to be ordered the boots.

[8] According to Plaintiff, Defendant "made a big scene" on June 14, 2017, trying to solve the issue of getting Plaintiff the new style boots. Doc. 11 at 10. Defendant also recommended the correct style boots for Plaintiff, but despite the recommendation, Defendant's company would not purchase them. Id. at 11.

Plaintiff also accuses Defendant of lying in some of his treatment notes and to Plaintiff during appointments. According to Plaintiff, Defendant lied when he (1) told Plaintiff he would mail the refurbished prosthetic to Plaintiff's institution, and (2) wrote in his December 29, 2016 treatment note that the prosthetic was built to Plaintiff's satisfaction. See Doc. 66 at 2, 3, 8. While such actions would be unprofessional, the records show that Defendant continually endeavored to resolve Plaintiff's issues. Simply put, even viewing the evidence and drawing all reasonable inferences in the light most favorable to Plaintiff, the record does not support a finding of deliberate indifference. There is not enough evidence to support Plaintiff's claim that would allow a reasonable jury to find in his favor.[9]

**B. ADA**

Defendant did not address Plaintiff arguments that he also violated the ADA. Nevertheless, because Plaintiff has failed to state a claim under the ADA, the Court can dismiss the claims pursuant to 28 U.S.C. § 1915(e)(2)(B).

> Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. See 42 U.S.C. § 12132. "Only public entities are liable for violations of Title II of the ADA." Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010). State prisons are public entities for purposes of the ADA. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). . . .
>
> To state a claim of discrimination under Title II, a claimant must prove:

---

[9] If this was ever a case, it was likely a medical malpractice case under state law, not an Eighth Amendment case under § 1983.

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.
>
> Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007). Public entities must make reasonable modifications to their policies, practices, or procedures when necessary to avoid discrimination on the basis of a disability unless making the modifications would "fundamentally alter the nature of the service[s], program[s], or activit[ies]." 28 C.F.R. § 35.130(b)(7).

Owens v. Sec'y, Fla. Dep't of Corr., 602 F. App'x 475, 477-78 (11th Cir. 2015) (some internal citations modified); see Shotz v Cates, 256 F.3d 1077, 1079 (11th Cir. 2001).

Because only public entities may be liable under the ADA, Plaintiff fails to state a claim against Defendant in his individual capacity. See, e.g., Owens, 602 F. App'x at 478; Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010) ("Only public entities are liable for violations of Title II of the ADA."); Badillo v. Thorpe, 158 F. App'x 208, 211 (11th Cir. 2005) ("[T]here is no individual capacity liability under Title II of the ADA[.]"). Even assuming Defendant can be sued in his official capacity under the ADA, Plaintiff has failed to provide factual allegations showing that he was discriminated against on the basis of his disability. Indeed, Plaintiff was receiving medical services from Defendant for the purpose of treating his disability. The ADA was not designed to subsume medical malpractice claims, and ADA claims do not arise from a defendant's failure to provide medical care to a disabled inmate. See Jones v. Rutherford, 546 F. App'x 808, 811-12 (11th Cir. 2013) ("[T]he ADA is not a remedy for

medical malpractice and would not be violated by a prison[] simply failing to attend to the medical needs of its disabled prisoners." (quotations and citations omitted)); <u>Finn v. Haddock</u>, 459 F. App'x 833, 837-38 (11th Cir. 2012) (stating that "failure to provide adequate medical treatment . . . does not violate the ADA" (citations omitted)). Thus, all claims against Defendant under the ADA are due to be dismissed.

Accordingly, it is

**ORDERED:**

1. Plaintiff's claims under the ADA are **DISMISSED with prejudice**.

2. Defendant's Motion for Summary Judgment (Doc. 64) is **GRANTED**.

3. The Clerk shall enter judgment dismissing with prejudice Plaintiff's ADA claims, and otherwise in favor of Defendant and against Plaintiff.

4. The Clerk shall thereafter close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of August, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 8/2
c:
William Cecil Baxter, #543205
Counsel of Record